**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
UNITED STATES OF AMERICA,           :
                                    :
                                    :         16 Cr. 500 (RMB)
        - against -                 :
                                    :         **DECISION & ORDER**
                                    :
ELEELIN DIAZ,                       :
                                    :
                    Defendant.      :
---------------------------------------------------------------x

Having reviewed the record herein, including without limitation: (1) Defendant Eleelin Diaz's motion, filed pro se and dated June 2, 2020, requesting that the Court grant him early release from prison. See Mot. at 1. Diaz, a 30-year-old-male, states that he is "scared to catch the coronavirus due to [his] beginning stages of high blood pressure and [] being overweight." Id. and (2) the Government's response, dated June 19, 2020, opposing Diaz's release and contending: (i) "Diaz has failed to exhaust administrative remedies" pursuant to 18 U.S.C. § 3582. See Opp. at 1-4; (ii) there are no "extraordinary and compelling" circumstances warranting Diaz's release pursuant to 18 U.S.C. § 3582. Id. at 1, 6-7; and (iii) releasing Diaz early is not supported by the 18 U.S.C. § 3553(a) sentencing factors. Id. at 7. The Government also requests that Diaz's BOP medical records, filed as Exhibit A to its response ("Exhibit A"), be filed under seal. Id. at 6 n.3, **the Court hereby accepts Diaz's medical records under seal but denies Diaz's motion for a compassionate release, as follows**:

**I.   Background**

On April 16, 2018, Diaz pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B). See Apr. 16, 2018 Plea Hr'g Tr. at 6:7-22. On

1

October 4, 2018, the Court sentenced Diaz to 65 months imprisonment to be followed by 5 years of supervised release. See Oct. 4, 2018 Judgment. Diaz is incarcerated at FCI Cumberland, a medium-security facility in Maryland with an adjacent minimum-security camp. See Opp. at 1; https://www.bop.gov/locations/institutions/cum/. He has served approximately 33 months of his 65-month sentence and is not scheduled for release until July 5, 2022. See Opp. at 1.

## II. Legal Standard

18 U.S.C. § 3582(c)(1)(A) provides in part:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . .

United States Sentencing Commission policy statement U.S.S.G. § 1B1.13 provides that a court may reduce a term of imprisonment if "extraordinary and compelling reasons warrant the reduction," "the defendant is not a danger to the safety of any other person or to the community . . .," and "the reduction is consistent with this policy statement." Application Note 1 states in part that extraordinary and compelling reasons may exist if: (1) "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;" or (2) "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."

### III. Findings

The Court's findings are as follows:

1. The Government states that Diaz "does not address exhaustion of administrative remedies" in his motion and that "[t]he BOP has informed the Government that there is no record of Diaz having asked BOP to recommend that he be granted compassionate release." See Opp. at 2. While the exhaustion requirements in 18 U.S.C. § 3582(c)(1)(A) can be waived, Diaz's conditions do not seem that serious and there is nothing about the current conditions at FCI Cumberland that justify a waiver. *See U.S. v. Brady*, No. S2 18 CR 316 (PAC) (S.D.N.Y Apr. 13, 2020). "[B]ecause [Diaz] ha[s] not yet exhausted his efforts to obtain release through the BOP, and because a waiver of the statutory requirement [is] not warranted in his case" the "motion for compassionate release . . . [is] denied." *See U.S. v. Brady*, 2020 WL 2512100, at *2 (S.D.N.Y. May 15, 2020).

2. Even if Diaz had exhausted his administrative remedies or waiver of the exhaustion requirement was warranted, the Court likely would deny Diaz's motion because there do not appear to be "extraordinary and compelling" circumstances warranting his release, as follows:

    a. The Center for Disease Control ("CDC") acknowledges that high blood pressure "may increase [the] risk of severe illness from COVID-19." See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html. The CDC cites to a 2017 report and defines "high blood pressure" as a systolic reading of 130 or higher and a diastolic reading of 80 or higher, i.e. 130/80 or higher. *See U.S. v. Jones*, 2020 WL 3451820, at *3 (D.Conn. June 24, 2020); https://www.cdc.gov/bloodpressure/about.htm.

b. Diaz's BOP medical records show that Diaz's most recent blood pressure measurement, taken on November 7, 2018, was 125/80, which "does not qualify as 'high blood pressure.'" *See Jones*, 2020 WL 3451820, at *3; Opp. Ex. A at 59; https://www.cdc.gov/bloodpressure/about.htm. Diaz's previous two blood pressure readings, on December 19, 2017 and March 14, 2018, were also within normal levels at 116/77 and 114/78, respectively. See Opp. Ex. A at 5, 59; https://www.cdc.gov/bloodpressure/about.htm. Diaz's BOP medical records do not reflect blood pressure complications. See Opp. Ex. A.

c. Diaz's BOP medical records show that he has a body mass index ("BMI") of 35.3 which, according to the CDC, increases his "risk of severe illness from COVID-19." *See U.S. v. Shah*, 2020 WL 3578103, at *2 (S.D.N.Y. June 30, 2020); https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (updated June 25, 2020) ("Having obesity, defined as a [BMI] of 30 or above, increases your risk of severe illness from COVID-19"); Opp. at 6. Diaz's BOP medical records do not appear to reflect any complications related to his BMI or weight. See Opp Ex. A.

d. FCI Cumberland appears to be responding to the COVID-19 pandemic and "the BOP has instituted extensive procedures to reduce any likelihood of an outbreak of COVID-19 at FCI Cumberland." *See U.S. v. Gionfriddo*, 2020 WL 3603754, at *1 (D.Conn. July 2, 2020); Opp. at 3; *see also U.S. v. Little*, 2020 WL 3442173, at *2 (E.D.Va June 23, 2020). As of July 9, 2020, it appears that 5 of the nearly 1,100 inmates at FCI Cumberland have tested positive for COVID-19. See https://www.bop.gov/coronavirus/.

4

3. Although, as noted, Diaz is obese, BOP medical records appear to show that the BOP is managing his condition. *See U.S. v. Foozailov*, 2020 WL 3268688, at *2 (S.D.N.Y. June 17, 2020); *see also U.S. v. Decker*, 2020 WL 3268706, at *2 (S.D.N.Y. June 17, 2020) ("defendant has reported . . . that he is obese . . . [b]ut this is not enough to warrant compassionate release, even in the present circumstances . . . [because] affliction with various medical conditions alone is insufficient to justify compassionate release"); *U.S. v. Kerrigan*, 2020 WL 2488269, at *3 (S.D.N.Y. May 14, 2020) ("[defendant] has failed to articulate an extraordinary and compelling reason why his sentence should be reduced . . . [defendant] is significantly younger than 65 years old, and while obesity . . . may indicate 'high risk' according to the CDC, none of the other medical issues that [defendant] asserts indicate that he suffers from other primary risk factors looked to by courts, such as asthma, diabetes, or immunocompromization").

4. The Court likely would deny Diaz's motion also because Diaz poses a danger to the community. See U.S.S.G. § 1B1.13. Among other reasons: (1) "The drug-trafficking organization in which [Diaz] was a participant was extensive, and it included numerous members, dozens of shipments through the mail, and massive quantities of cocaine." See Sept. 24, 2018 Gov't Ltr. at 3; (2) "[Diaz] was involved in multiple stages of the drug-trafficking process, including: packaging parcels containing cocaine; personally sending such packages from Puerto Rico to New York; receiving such packages and transporting them to others as an intermediary; coordinating with other co-conspirators regarding the logistics of delivery, transfer, and sale of cocaine; and tracking the delivery status of numerous packages containing cocaine when they were en route via the United States Postal Service." Id.; (3) "[Diaz] continued his participation in the narcotics conspiracy even after being charged in the

Indictment." Id.; and (4) "BOP records show that Diaz incurred a disciplinary violation in prison for 'possessing drugs/alcohol' in May 2019." See Opp. at 7.

"[T]he underlying conduct that led to [his] incarceration gravely endangered the community and reflects an individual who is accustomed to distributing controlled and highly addictive substances in his community." *See U.S. v. Batista*, 2020 WL 3249233, at *3 (S.D.N.Y. June 16, 2020) (quotations omitted); *U.S. v. Garcia*, 2020 WL 2468091, at *5-6 (S.D.N.Y. May 13, 2020).

5. The sentence reduction sought by Diaz would fail to satisfy the purposes of sentencing, including "to reflect the seriousness of the offense, to promote respect for the law, [] to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, [and] to protect the public from further crimes of the defendant." *See Garcia*, 2020 WL 2468091, at *6; 18 U.S.C. § 3553(a)(2)(a)-(c); *see also Batista*, 2020 WL 3249233, at *4.

## IV. Conclusion & Order

Defendant Diaz's motion for compassionate release [Dck. # 449] is respectfully denied. The Government's request to file Exhibit A under seal is granted. *See U.S. v. Daugerdas*, 2020 WL 2097653, at *3 n.2 (S.D.N.Y. May 1, 2020).

The Clerk of the Court is respectfully requested to send a copy of this Decision & Order to Defendant Diaz.

Dated: New York, New York
July 10, 2020

*Richard M. Berman*
**RICHARD M. BERMAN, U.S.D.J.**